UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

METAL PROCESSORS, INC.                                                                                   PLAINTIFF

V.                                                                                    CIVIL NO. 3:25-CV-214-DPJ-ASH

TRANSPORTATION PROVIDERS SERVICES, INC.
TRANS ABINGDON CARRIER, LLC                                                       DEFENDANTS

ORDER

This lost-cargo case comes before the Court on Defendant Transportation Providers Services, Inc.'s (TPSI's) motion to dismiss [21] under Federal Rule of Civil Procedure 12(b)(6). As explained below, the Court grants TPSI's motion to dismiss because Plaintiff Metal Processors, Inc. (MPI) failed to state a claim. Plaintiff will, however, be allowed a final opportunity to seek leave to amend. The Court also orders MPI to show cause why Defendant Trans Abingdon Carrier, LLC (TAC) should not be dismissed for failure to perfect service of process under Rule 4(m).

I.      Facts and Procedural History

MPI asserts that it contracted with TPSI to broker the delivery of copper from Mississippi to Indiana. Am. Compl. [19] ¶¶ 9, 11. "TPSI [then] arranged for TAC to transport the Cargo," *id.* ¶ 31, but it was either lost or stolen along the way, *id.* ¶¶ 32. Aggrieved by the loss, MPI submitted a formal claim to TPSI, but TPSI denied responsibility. *Id.* ¶¶ 15–16.

On March 27, 2025, MPI sued TPSI, which prompted the first Rule 12(b)(6) motion to dismiss. Def.'s Mot. [9] at 1. Rather than respond, MPI filed an unopposed motion seeking leave to amend, which the Court granted. *See* Aug. 1, 2025 Text-Only Order. The Amended Complaint added a Carmack Amendment claim against TAC. Am. Compl. [19] ¶¶ 17–26 (citing 49 U.S.C. § 14706). It also dropped several claims against TPSI, leaving only a breach-of-

contract claim against that Defendant. *Id.* ¶¶ 27–37. According to MPI, TPSI "failed to perform its due diligence when arranging transportation . . . [and] to fulfill its obligation under the contract to ensure the transportation of the Cargo in compliance with the terms set forth therein." *Id.* ¶¶ 33–34.

TPSI says the Amended Complaint still fails to state a breach-of-contract claim. It therefore seeks dismissal with prejudice. *See* Def.'s Mot. [21]. MPI opposes the motion but alternatively asks for another opportunity to amend. *See* Pl.'s Resp. [28] at 11. Those issues are fully briefed, and the Court has subject-matter jurisdiction over these diverse parties. The Court also notes that MPI never confirmed service of process on TAC after adding it as a defendant in the Amended Complaint. The time for service under Rule 4(m) has lapsed.

II.    Standard of Review

When considering a motion under Rule 12(b)(6), the "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) (per curiam)). But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To overcome a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. at 555 (citations and footnote

omitted). "This standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." *In re S. Scrap Material Co., LLC*, 541 F.3d 584, 587 (5th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

III.     Analysis

TPSI moved to dismiss under Rule 12(b)(6), arguing that the breach-of-contract claim against it "is either preempted by Congress or else fails to state a claim under Mississippi law." Def.'s Mem. [22] at 2. In its response, MPI says preemption does not apply but alternatively abandons the legal theory TPSI says is preempted.

A.     Federal Aviation Administration Authorization Act (FAAAA) Preemption

In both its original motion to dismiss and the pending motion, TPSI argued that the FAAAA preempts MPI's common-law breach-of-contract claim. The FAAAA includes this preemption language: "[A] State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a . . . service of any . . . broker . . . with respect to the transportation of property." 49 U.S.C. § 14501(c)(1) (inapplicable exceptions omitted).

The parties agree that this language "does not preempt ordinary breach[-]of[-]contract claims." Pl.'s Resp. [28] at 4; *see also* Def.'s Mem. [22] at 4. They get there based on *American Airlines, Inc. v. Wolens* and its progeny. 513 U.S. 219 (1995) (construing identically worded Airline Deregulation Act (ADA) preemption clause). But there's a limit to the *Wolens* exception. The Supreme Court noted that while the "ADA permits state-law-based court adjudication of routine breach-of-contract claims," the state could not "impos[e] their own substantive standards with respect to" the provided services. *Id.* at 232. "This distinction between what the State dictates and what the airline itself undertakes confines courts, in breach-of-contract actions, to

3

the parties' bargain, with no enlargement or enhancement based on state laws or policies external to the agreement." *Id.* at 233. Thus, "state-imposed obligations" in contracts are preempted because they do not flow from the parties' bargain. *Nw., Inc. v. Ginsberg*, 572 U.S. 273, 286–87 (2014) (finding preemption for breach claim based on implied covenant of good faith and fair dealing).

TPSI says MPI's claim goes beyond the parties' bargain because MPI alleges that TPSI "failed to perform its *due diligence* when arranging transportation and/or delivery of the Cargo." Def.'s Mem. [22] at 5 (emphasis added) (quoting Am. Compl. [19] ¶ 33). Nowhere in the Amended Complaint did MPI allege that TPSI agreed to exercise due diligence when selecting a carrier. TPSI therefore argues that if the duty arises from state law, then this is not the "routine" breach of contract claim that *Wolens* frees from preemption. *Id.* at 5–7.

MPI never says otherwise. It instead faults TPSI for its "singular focus on the phrase 'due diligence'" in a "stray paragraph," and offers to strike the phrase "[t]o the extent the court finds [it] . . . confusing or extraneous." Pl.'s Resp. [28] at 7. Without any contrary argument, TPSI's preemption argument appears correct. The Court therefore turns to MPI's alternative response and will evaluate the Amended Complaint without reference to due diligence.

B.     Breach of Contract

To begin, the Amended Complaint includes no references to specific contract provisions or terms that TPSI breached. *See* Am. Compl. [19] ¶¶ 28–37. But MPI says that is unnecessary because "[t]he Fifth Circuit recently clarified that federal pleading standards 'do not require plaintiffs to plead the specific breached provision.'" Pl.'s Resp. [28] at 9 (quoting *Spinosa v. Foremost Ins. Co. Grand Rapids Mich.*, No. 24-30472, 2025 WL 304530, at *1 n.2 (5th Cir. Jan. 27, 2025). "While litigants should, when possible, identify specific contractual provisions

4

alleged to have been breached, Rule 8 does not require that level of granularity." *Id.* (quoting *Sanchez Oil & Gas Corp. v. Crescent Drilling & Prod., Inc.*, 7 F.4th 301, 309 (5th Cir. 2021)).

All of that is true, but there's more to it. *Spinosa* also said, "[S]omething more than conclusory comments is required as the Supreme Court made clear in *Twombly/Iqbal*." 2025 WL 304530, at *1 n.2. So MPI must plead *facts* showing that a breach-of-contract claim under Mississippi law "is plausible on its face." *Twombly*, 550 U.S. at 570.

Under Mississippi law, "[a] breach-of-contract [claim] has two elements: (1) 'the existence of a valid and binding contract,' and (2) a showing 'that the defendant has broken[] or breached it.'" *4-Way Elec. Servs., LLC v. Huntcole, LLC*, 366 So. 3d 844, 852 (Miss. 2023) (quoting *Maness v. K & A Enters. of Miss., LLC*, 250 So. 3d 402, 414 (Miss. 2018)). "Mississippi courts[, however,] will refuse to enforce a contract that is 'vague, indefinite and ambiguous.'" *Massengill v. Guardian Mgmt. Co.*, 19 F.3d 196, 201 (5th Cir. 1994) (citing *Sta–Home Health Agency, Inc. v. Umphers*, 562 So. 2d 1258, 1260–61 (Miss. 1990)).

MPI's Amended Complaint states two alleged breaches in Count II—that TPSI failed to: (1) use due diligence in selecting TAC, Am. Compl. [19] ¶ 33, and (2) "ensure the transportation of the Cargo," *id.* ¶ 34. As noted, MPI has dropped the due-diligence theory, but it maintains that TPSI breached the agreement by selecting TAC. Pl.'s Resp. [28] at 7. According to MPI' brief, "TPSI agreed to facilitate and secure appropriate transportation for the Cargo and to ensure delivery through a responsible carrier." *Id.* at 2 (citing Am. Compl. [19] ¶¶ 28–29, 34, 36). The question is whether the Amended Complaint includes non-conclusory facts sufficient to plausibly show TPSI agreed to those terms.

The "Facts" section of the Amended Complaint alleged that "[t]he Cargo was brokered by TPSI. MPI contacted TPSI as a licensed broker of property in interstate commerce to arrange for

5

transportation of the Cargo with a responsible carrier." Am. Compl. [19] ¶ 11. Count II, alleging breach of contract, added this:

> 28. On or about May 28, 2024, MPI and TPSI entered into an agreement pursuant to which TPSI agreed to facilitate and secure the transportation of MPI's Cargo from Mississippi to Indiana.
>
> 29. In exchange for arranging and securing transportation of the Cargo, MPI agreed to pay TPSI Sixteen Hundred and 00/100 dollars ($1,600) upon successful delivery.
>
> 30. The parties possessed and demonstrated the required assent and/or intent to enter into a contractual agreement by performing under the terms of their agreement.
>
> 33. TPSI, by and through its employees and agents, failed to perform its due diligence when arranging transportation and/or delivery of the Cargo.
>
> 34. TPSI, by and through its employees and agents, failed to fulfill its obligation under the contract to ensure the transportation of the Cargo in compliance with the terms set forth therein, which resulted in the Cargo being lost and/or stolen during transport.
>
> 36. TPSI, by and through its employees and agents, breached the agreement between it and MPI by failing to arrange for and secure appropriate transportation of the Cargo from Mississippi to Indiana.

*Id.* ¶¶ 28–30, 33, 34, 36. These allegations and conclusions are not enough to state a plausible claim under Mississippi law based on the two theories MPI advances.

**Breached duty to ensure delivery.** MPI's most concrete statement of the parties' agreement is that "[i]n exchange for arranging and securing transportation of the Cargo, MPI agreed to pay TPSI Sixteen Hundred and 00/100 dollars ($1,600) upon successful delivery." *Id.* ¶ 29. That begs the question: Did TPSI agree to ensure unsuccessful deliveries in addition to losing the commission?

That theory does appear in Count II when MPI says TPSI "failed to fulfill its obligation under the contract to ensure the transportation of the Cargo in compliance with the terms set

forth therein." *Id.* ¶ 34. But that's a mere legal conclusion that is not entitled to the presumption of truth. *See Iqbal*, 556 U.S. at 678. MPI never specifically says what TPSI agreed to do other than procure transportation. And MPI "offers no details of the contract, of its formation, or of its terms" that might allow the Court to otherwise find a plausible claim. *Osborne v. Rocket Mortg., LLC*, No. 2:24-CV-101-TMB-RPM, 2025 WL 1646778, at *5 (S.D. Miss. Mar. 31, 2025) (quoting *Burns v. Georgetown Univ.*, No. 3:07-CV-486-HTW-LRA, 2012 WL 2563037, at *2 (S.D. Miss. May 30, 2012)). Thus, the alleged duty to ensure shipment is not plausibly pleaded.[1]

**Breached duty in selecting TAC.** MPI alleges as part of Count II that TPSI "fail[ed] to arrange for and secure appropriate transportation of the Cargo from Mississippi to Indiana." Am. Compl. [19] ¶ 36. Assuming that statement was not referring to the now-withdrawn due-diligence theory, it remains a legal conclusion that doesn't plausibly show TPSI agreed to do anything other than find a carrier for the delivery.

The closest MPI comes to alleging facts that might support a breach-of-contract claim based on the TAC selection is this: "MPI contacted TPSI as a licensed broker of property in interstate commerce to arrange for transportation of the Cargo with a *responsible* carrier." *Id.* ¶ 11 (emphasis added). This explains why MPI hired TPSI but fails to show TPSI agreed to find "a responsible carrier." *Id.* In any event, there are no pleaded facts suggesting the parties' mutual understanding on this point. The averment in paragraph 11 therefore suffers from the

---

[1] None of the pleaded facts identify a contract where the "terms [are] set forth therein" as alleged in Count II. Am. Compl. [19] ¶ 34. In fact, it is unclear whether a written agreement exists. MPI's response states that "booking correspondence" proves the agreement. Pl.'s Resp. [28] at 10. But that correspondence is neither referenced in the Amended Complaint nor part of the record. It is therefore beyond the Court's review under Rule 12(b)(6). *See* Fed. R. Civ. P. 12(d). MPI alternatively argues that "oral contracts are enforceable in Mississippi." Pl.'s Resp. [28] at 10–11 (quoting *R.C. Constr. Co. v. Nat'l Off. Sys., Inc.*, 622 So. 2d 1253, 1255 (Miss. 1993)). Whether this was an oral or written agreement doesn't necessarily matter at this point, the question remains whether the facts plausibly show an agreement TPSI breached.

same problems as the allegations about ensuring the cargo—there are no facts plausibly showing that TPSI agreed to this alleged duty.  *See Osborne*, 2025 WL 1646778, at *5.

Also, even if TPSI agreed to find "a responsible carrier," the term is ambiguous without additional facts.  Does it mean TPSI agreed to find a trustworthy carrier or simply the carrier responsible for making the delivery?  As noted, "Mississippi courts will refuse to enforce a contract that is vague, indefinite and ambiguous."  *Massengill*, 19 F.3d at 201 (internal quotation marks omitted).  Additional facts might remove the ambiguity, but they are absent from the Amended Complaint.  Thus, the context is missing, and "[d]etermining whether a complaint states a plausible claim for relief [is] . . . a context-specific task."  *Iqbal*, 556 U.S. at 679.

In sum, the pleaded facts fail to "nudge[]" MPI's breach-of-contract claim "across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 570.

B.    Leave to Amend

In response to Defendant's motion to dismiss, MPI seeks leave to amend the Amended Complaint if "the Court were to disagree as to the facial plausibility of MPI's contract claim."  Pl.'s Mem. [28] at 11.  That request is not properly before the Court under Uniform Local Rules 7(b)(2), 7(b)(3)(C), 7(b)(4), and 15.

That said, district courts should not dismiss cases "without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead with particularity after being afforded repeated opportunities to do so."  *Hart v. Bayer Corp.*, 199 F.3d 239, 247 n.6 (5th Cir. 2000) (citation omitted).  MPI was afforded one opportunity to amend, but it did not fix everything TPSI noted in its first motion.  Nevertheless, it is not apparent that the defect is incurable.  Accordingly, the Court grants TPSI's motion without prejudice and gives MPI 14 days to seek leave to amend.  The motion must comply with Uniform Local Rule 15.

    C.    TAC

MPI sued TAC 148 days ago on August 1, 2025. *See* Am. Compl. [19]. There is no indication from the docket that service has been perfected. Under Rule 4(m), MPI had "90 days after the complaint [was] filed" to serve TAC. When a plaintiff misses that mark, "the court--on motion or on its own *after notice to the plaintiff*--must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m) (emphasis added). MPI is therefore given 14 days to show cause why the Court should not dismiss MPI.

IV.    Conclusion

The Court has considered the parties' arguments. Those not specifically addressed would not have changed the outcome. For the foregoing reasons, Defendant TPSI's motion to dismiss [21] is granted, but MPI is given 14 days from the date of this Order to seek leave to amend. It is also given 14 days to show cause why TAC should not be dismissed.

    **SO ORDERED AND ADJUDGED** this the 6th day of March, 2026.

                                            s/ *Daniel P. Jordan III*
                                            UNITED STATES DISTRICT JUDGE